COMMONWEALTH *vs.* JOHN L. FESTA.

Middlesex.    October 6, 1975. — January 5, 1976.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Homicide.    Practice, Criminal,* Questioning of witness by judge;
    Exceptions: failure to save exception. *Evidence,* Questioning of
    witness by judge, Of identity, Contradiction of witness, Admissions
    and confessions, Judicial discretion, Interpreter. *Interpreter.*

At the trial of an indictment for murder, participation by the judge
    in the questioning of a witness was not prejudicial to the defend-
    ant where the questions were designed to develop the most trust-
    worthy testimony, where the judge instructed the jury that
    nothing he said should influence their judgment as to the facts,
    and where the questioning of the witness was not extensive but
    was a minor item in a lengthy trial.    [422-423]
At the trial of a murder indictment no showing of actual malice or
    "ill will" on the part of the defendant toward the victim was
    necessary to support the jury's verdict of murder in the second
    degree.    [423-424]
At the trial of an indictment for murder, testimony that the defend-
    ant had been heard talking with the victim was admissible where
    the witness had been acquainted with the defendant for a period
    of ten years and had often heard him in conversation with the
    victim; and the witness's age, her inability to relate the substance
    of the conversation, and the fact that she had taken medication
    affected only the weight, not the admissibility of her testimony.
    [424-425]
Where there was an inconsistency between testimony of a witness
    called by the Commonwealth in a criminal case and a previous
    statement by him, and the witness was fully apprised of the time,
    place and contents of the prior statement and was given full
    opportunity to explain it in accordance with G. L. c. 233, § 23,
    there was no error in allowing the Commonwealth to introduce
    the prior statement for impeachment purposes.    [425-426]
At a murder trial a statement made by the defendant to a police
    officer was properly admitted in evidence where no motion to
    suppress the statement had been made prior to trial and there was

no request for a voir dire and no objection or exception to the admission of the statement during the trial. [426-427]

This court did not consider the defendant's contention that it was error at a murder trial to permit a witness testifying in Italian to give lengthy and seemingly nonresponsive answers on the grounds that some of the statements were not translated and two of the jurors understood Italian, where the judge instructed the witness to limit herself to responsive answers whenever the defendant objected to her rambling and frequently without waiting for such objection and where the defendant did not move to have the Italian speaking jurors excluded nor to have apparently extraneous answers translated. [427-429]

Guidelines on procedures to be followed at a trial when a witness must testify through an interpreter. [429-430]

INDICTMENTS found and returned in the Superior Court on March 6, 1974.

The case was tried before *Hallisey, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert A. Stanziani* for the defendant.

*Alan L. Kovacs,* Assistant District Attorney (*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, with him) for the Commonwealth.

REARDON, J. The defendant was indicted on March 6, 1974, for murder in the first degree of Adolph Abruzzese, and in October, 1974, was tried, found guilty of murder in the second degree and sentenced to life imprisonment. His appeal is here under G. L. c. 278, §§ 33A-33G. He argues six assignments of error which will be treated seriatim below.

A jury could have found that on January 27, 1974, about 3 A.M., Abruzzese was shot in the head in his Malden home and that as a consequence he died on February 10, 1974, at a hospital. The defendant, accompanied by one Dolores Montanino, had left an East Boston bar at some time around 2:30 A.M. on January 27, 1974. The defendant had previously stated that he was calling a friend to get a ride to Montanino's house. The

call produced a certain Robert West who came in a truck
to pick them up. When the three got into the truck the
defendant asked West to drive him to Malden, where he
then told West to stop the truck on Hancock Road.
Upon alighting from the truck, he asked Montanino and
West to wait there for him. After waiting for five or six
minutes his two companions decided to look for the
defendant, and West tried unsuccessfully to start the
truck's engine. He and Montanino pushed the truck,
endeavoring to "jump-start" it. As the truck finally
started, Montanino heard a noise that sounded like a fire-
cracker. The movements of West and Montanino were
observed by two witnesses living close by.

Between 3 A.M. and 3:30 A.M., Maria Abruzzese, the
mother of the victim, heard a knock at her door at 24
Hancock Road, Malden. Her son, Adolph Abruzzese,
answered the door. She heard a person speaking to her
son and recognized the voice as that of the defendant.
After her son told him to go home, the next thing that
she heard were shots and some glass breaking. Although
she was afflicted by arthritis, she struggled from her chair
and walked into the kitchen, where she saw her son lying
on the floor with blood on his face. The back door then
opened, and the defendant entered and put something
into a trash basket. He obtained a pillow from a room
nearby, placed it beneath the victim's head, and said,
"You'll be all right. I'm sorry." Two Malden police
officers who arrived at the scene after receipt of a radio
dispatch at approximately 3:10 A.M. noticed the truck
with a woman standing beside it, and then proceeded to
24 Hancock Road where the victim's mother was
screaming on the front porch. When one of the officers
entered the house he saw the defendant leaning over the
victim and saying, "I'm sorry, Al. I'm helping you, Al."
The defendant was apprehended, handcuffed and taken
to the Malden police station where his statement was
taken. Later that day a police sergeant, while searching
the kitchen in the Abruzzese home, found a Colt .38

caliber revolver in the trash basket and a spent projectile on the kitchen counter. Prior to his death the victim was interviewed at the hospital by a Malden police lieutenant. He told the lieutenant that the defendant was his friend and that he did not shoot him.

1. The defendant argues that the judge erred in intimating that the witness Dolores Montanino was lying. After direct examination the judge asked her if she was aware that she had sworn to tell the truth and that failure to do so would subject her to criminal penalties. The judge then inquired concerning her testimony as to the circumstances of her accompanying West and the defendant to Malden on the night in question. She had stated that there was no discussion among them as to why they were bound for Malden despite the fact that, according to her earlier testimony, the defendant had told her he was getting her a ride to her home, which was a short distance from the East Boston bar where she had been with the defendant and in the opposite direction from Malden. The judge then asked her, "Do you want to leave it with the jury that there was no discussion about why you were going to Malden?" The defendant objected to this questioning and saved an exception; he contends "that the remarks of the Court could warrant the jury in finding that the Judge disbelieved the witness's sworn testimony."

There is no doubt that a judge can properly question a witness, albeit some of the answers may tend to reinforce the Commonwealth's case, so long as the examination is not partisan in nature, biased, or a display of belief in the defendant's guilt. *Commonwealth* v. *Hanscomb,* 367 Mass. 726, 730 (1975). *Commonwealth* v. *Oates,* 327 Mass. 497, 500 (1951). See 3 J. Wigmore, Evidence § 784 (Chadbourn rev. 1970). We have not restricted the right, and perhaps the duty, of a judge to intervene occasionally in the examination of witnesses. We had such an example in *Commonwealth* v. *Fiore,* 364 Mass. 819, 826-827 (1974), where discrepancies developed

between certain testimony of witnesses and earlier testimony of the same witnesses. The judge moved in and "took a hand in indicating to . . . [each] witness the extent of the inconsistencies." We held in that case that the questions by the judge were not clearly biased or coercive, and were basically directed toward protecting the witnesses from possible perjury and developing the most trustworthy testimony. We are of the view that the same situation obtains here. See *Commonwealth* v. *Fleming*, 360 Mass. 404, 409 (1971); *Commonwealth* v. *Freeman*, 352 Mass. 556, 560 (1967).

Furthermore, even if the judge was overzealous in the manner in which he interrogated the witness, we conclude that this constituted at most harmless error. The judge in his charge to the jury specifically instructed them that they alone were to decide the facts, stating that nothing which he had said "must tend to influence your judgment as to the facts. Nothing that I may have done during the trial should be taken by you as an indication of the facts that you should find. You are the sole judge of the facts." See *Commonwealth* v. *Leventhal*, 364 Mass. 718, 723-724 (1974); *Commonwealth* v. *Oates, supra* at 500. In addition, the interrogation of Montanino by the judge was a minor item in a lengthy trial, not comparable to judicial interventions which have been held to be so prejudicial to the defendant as to constitute reversible error (see, e.g., *Webb* v. *Texas*, 409 U.S. 95, 96-97 [1972]; *United States* v. *Hill*, 332 F.2d 105, 106 [7th Cir. 1964]). We conclude that the judge's behavior when considered in the context of the entire trial and the charge to the jury cannot be deemed to have deprived the defendant of a fair trial.

2. There was no error in denying the defendant's motion for a directed verdict of not guilty with respect to that part of the indictment which charged him with murder in the second degree. The evidence against him, if believed, might reasonably lead a jury to conclude that the facts were "incompatible with the innocence of the

defendant and not in accord with any other theory than his guilt." *Commonwealth* v. *Francis,* 355 Mass. 108, 109-110 (1969). The argument of the defendant that there was no evidence of malice or "ill will" on the part of the defendant toward the victim, and that this therefore precluded a verdict of guilty of murder in the second degree, betrays a basic misunderstanding of the meaning of "malice aforethought" employed with respect to the crime of murder in this Commonwealth. Malice aforethought does not necessarily require a showing of ill will toward the victim. Rather it comprehends any intent to inflict injury without legal justification or palliation. *Commonwealth* v. *Hicks,* 356 Mass. 442, 444-445 (1969). *Commonwealth* v. *Bedrosian,* 247 Mass. 573, 576 (1924). When a killing is the result of the intentional use of a deadly weapon, malice ordinarily may be inferred. *Commonwealth* v. *Davis,* 364 Mass. 555, 557 (1974). *Commonwealth* v. *McCauley,* 355 Mass. 554, 559 (1969). The evidence here was sufficient to support the jury's verdict of guilty of murder in the second degree.

3. The defendant argues that the testimony of the victim's mother, that she heard the defendant talking to her son at the door of the house shortly before he was shot, should have been excluded because no foundation was laid to establish that she could recognize the defendant's voice. Mrs. Abruzzese's testimony makes it plain that she knew the defendant as a friend of her son for ten years, that he had often visited with her son at her home, and that on a number of occasions she had heard him in conversation with her son. On the basis of the foregoing she testified that she was able to recognize the defendant's voice. The foundation for her testimony was more than adequate. *Commonwealth* v. *Murphy,* 356 Mass. 604, 611 (1970). *Commonwealth* v. *Kendrick,* 351 Mass. 203, 213 (1966). *Chartrand* v. *Registrar of Motor Vehicles,* 345 Mass. 321, 325 (1963). Mrs. Abruzzese's age (eighty-eight years), the fact that she was not able to relate the substance of what was said, and the fact that

she had taken pain-relieving medication that evening, affect the weight, not the admissibility, of the testimony. See *Commonwealth* v. *Guerro,* 349 Mass. 277, 282-283 (1965); *Commonwealth* v. *Williams,* 105 Mass. 62, 67 (1870). The evidence was properly submitted to the jury.

4. The defendant assigns as error the admission in evidence of a prior inconsistent statement of the witness West on the ground that the foundation required by G. L. c. 233, § 23, had not been laid. West had been called by the Commonwealth and examined concerning the circumstances which led to his arrival in the vicinity of the Abruzzese home in Malden in close proximity to the time when the victim was shot. He testified that on the night in question he had received a telephone call from the defendant sometime after 2 A.M. and that he then met him and Dolores Montanino in East Boston and, at the defendant's request, drove them to Malden. On the night of the murder, however, he had given a contrary story to a police officer to the effect that he was on Hancock Road in Malden at that time because he could not sleep and was out "joy-riding." The officer was called and testified to this statement by West, which testimony was admitted over the defendant's objection as a prior inconsistent statement for the purpose of impeaching West's credibility. There is no merit in the defendant's argument that the impeachment of West was improper in that it lacked the necessary foundation. West was asked on the stand whether he remembered having a conversation with a police officer in a cruiser on the night of the crime, concerning his activities on that night. His answer was that he had no recollection of such a conversation. He was then shown a Malden police report containing the substance of his prior inconsistent statement. He read it and repeated that he did not remember making such a statement. The statute (G. L. c. 233, § 23) allows a party to impeach his own witness by a prior inconsistent statement provided that

"before proof of such inconsistent statements is given, the circumstances thereof sufficient to designate the particular occasion shall be mentioned to the witness and he shall be asked if he has made such statements and, if so, shall be allowed to explain them." The witness here was fully apprised of the time, place and content of the prior statement. See *Commonwealth* v. *LaFrance,* 361 Mass. 53, 57 (1972); *Goodney* v. *Smith,* 354 Mass. 734, 737 (1968). It was not necessary specifically to ask the witness to explain the prior statement once he had testified that he had no recollection of having made it. See *Commonwealth* v. *Ferrara,* 368 Mass. 182, 193 (1975). The foundation laid was satisfactory and the prior statement was properly admitted by the judge for the purpose of impeaching the witness's credibility.

5. Error is assigned in that a statement made by the defendant to a police officer at the Malden police station was allowed in evidence without a clear determination that the defendant had knowingly and intelligently waived his *Miranda* rights , and given the statement voluntarily, where other evidence tended to show that he was intoxicated when he made the statement. Since at the time of the admission of the statement those issues were not raised, the judge[1] was under no obligation to make findings on the voluntariness and effectiveness of the waiver. The defendant may not raise these issues for the first time on appeal. *Commonwealth* v. *Harris,* 364 Mass. 236, 241 (1973). *Commonwealth* v. *Smith,* 2 Mass. App. Ct. 821 (1974). See *Commonwealth* v. *MacDonald* (*No. 1*), 368 Mass. 395, 400 (1975); *Commonwealth* v. *Stanley,* 363 Mass. 102, 104 (1973).

---

[1] The defendant made no motion to suppress the statements prior to trial as he was required to do since the ground for a motion (the defendant's alleged intoxication) was known to the defendant and his counsel prior to trial. Rule 61 of the Superior Court (1974). Furthermore, during trial there was no request for a voir dire on these issues, and no objection or exception was made to the admission of the statements. It is to be noted that trial counsel was not counsel on appeal.

Having reviewed the evidence, however, we see no merit in the defendant's contentions in any event. While it appears that he had consumed some alcoholic beverages that evening, his physical, emotional and mental condition was not such as to render his otherwise voluntary and valid waiver ineffective. Compare *Commonwealth v. Hosey*, 368 Mass. 571 (1975).

6. The defendant also argues that the judge erred in allowing a witness to speak freely in Italian, in view of the fact that two of the jurors understood Italian and were thus able to understand everything she said. The witness's remarks included statements that were not translated into English for the judge, the prosecutor, the defense counsel and the court reporter. It appeared that the witness answered a considerable number of questions at length in Italian. To a number of these answers the defendant's counsel lodged objections and sought to have the judge instruct the witness to terminate her discourse in Italian and give an answer responsive to the question asked. The judge did so instruct the witness whenever an objection was voiced, and often on his own initiative when the witness appeared to be speaking excessively in Italian. There was no motion by the defendant to exclude the two Italian speaking jurors although defense counsel made reference to them in his objections and requests to the judge for instruction of the witness. Furthermore, there was no request that the apparently extraneous responses in Italian be translated into English. The result is that we are left without an adequate record on which to assess the defendant's claim of prejudice. Moreover, since no exception was ever taken, it would appear that the defendant was content at the time with the judge's efforts to honor his objections and keep the witness on track. It is conceivable that the defendant may have considered this to be appropriate strategy in the circumstances of this case. See *Commonwealth v. Underwood*, 358 Mass. 506, 509-510 (1970).

The witness, Mrs. Abruzzese, was a very voluble, eighty-eight year old woman. The testimonial discipline of responding to questions with a simple "Yes" or "No," or other limited answer without further explanation, was clearly a most unnatural style of discourse for her. Such a witness would have presented difficulties for counsel and the judge had she spoken perfect English. These difficulties were clearly exacerbated by the necessity of taking her testimony through an interpreter. Nonetheless the defendant who appears satisfied at trial with the judge's treatment of his objections, and leaves the record bare of any indication of prejudice, should not be permitted to press on appeal the failure of the judge to take action which was never requested. If any error derived from the judge's treatment of the untranslated digressions of Mrs. Abruzzese it would have been apparent at trial and could have been easily remedied. Inasmuch as the defendant failed to take any exception to the actions of the judge on this point, and indeed apparently requested through objections that those very actions be taken, we are not disposed to treat these issues, which he raises for the first time here. *Commonwealth v. MacDonald (No. 1)*, 368 Mass. 395, 397-400 (1975). *Commonwealth v. Boudreau*, 362 Mass. 378, 381 (1972). *Commonwealth v. Underwood, supra* at 507-510, and cases cited. *Amado v. Commonwealth*, 349 Mass. 716, 722 (1965).

The defendant argues that with a record barren of any prejudice we must entertain a presumption of prejudice in his favor. Had he moved to have the witness's extraneous statements translated into English, and had his motion been denied, we should be inclined to view his argument with more favor; here, however, the absence of any showing of prejudice is a result of his own failure to move to provide a record which preserves this issue for appeal. In addition, the judge on two occasions clearly and forcefully instructed the two Italian speaking jurors to disregard everything they heard in Italian and to

consider only the testimony coming through the inter-preter. In the absence of any showing of prejudice we must assume that the jurors followed the judge's instruc-tion and did not consider as evidence the statements in Italian.

We are, however, impelled to some observations designed to be helpful in cases such as this.

Problems of distortion and confusion obviously may arise when an interpreter is placed between the witness and counsel, the judge and the jury, even in the best of circumstances. In order to prevent a repetition of what occurred here, we suggest the following guidelines on procedures to be followed at a trial when a witness must testify through an interpreter.

1. Counsel should address his questions to the witness in the second person, and not to the interpreter.

2. The interpreter should translate the question exactly without any additional or supplementary remarks of his own.

3. The interpreter should then translate the answer of the witness in the first person, neither editing nor adding to the witness's words. Even if the answer is nonre-sponsive, the interpreter should give it and allow the judge to pass on its admissibility, for the interpreter's sole function is to translate.[2]

---

[2] When, as in the present case, it is obvious that the witness is re-peatedly giving nonresponsive, overly lengthy answers, the judge should adopt special procedures as needed to control the witness and the interpreter. As with an English speaking witness who tends to ramble, it may be necessary frequently to instruct the witness to limit his or her answer when a "Yes" or "No," or other specific response, is all that is called for by the question. Non-English speaking witnesses present problems since the judge is often unable to stop the witness in midstream in order to refocus his or her attention on the question asked. In such a case it may be appropriate for the judge to instruct the interpreter that if the witness is not responding to the question he should indicate this to the judge. The judge would then stop the witness, have the interpreter translate all of what the witness has said, pass on the admissibility of the answer as given, and further instruct or inquire of the witness as appropriate. However, the judge

4. Extraneous conversations between the witness and the interpreter should not be permitted. If such conversations do occur for some reason, they should be translated into English for the judge and counsel to hear.

5. When there are sitting on the jury individuals who understand the language of the witness, they are to be instructed that it is the interpreted testimony in English that is evidence and not their own translations of the witness's answers.

6. Neither party has the right to have a juror excused solely because that juror understands the language of a witness. However, in certain circumstances the judge in his discretion may decide whether it is appropriate to excuse such a juror. For example, this action may be desirable on motion of the defendant in a criminal matter in which the progress of the trial will not be interrupted by the removal of the juror, sufficient alternate jurors have been empanelled, and interpreted testimony constitutes a major part of the case. However, the decision so to excuse a juror is within the sound discretion of the trial judge, and failure to do so will rarely if ever provide grounds for reversal.

*Judgment affirmed.*

---

should not delegate to the interpreter the ultimate decision on admissibility. For example, an instruction to the interpreter to translate only that part of the answer that is responsive to the question would be error.