COMMONWEALTH vs. MICHAEL FITZGERALD.

Middlesex.    April 8, 1980. — June 10, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury, Questioning
  of witness by judge, Comment by judge. *Self-Defense.*

At the trial of a murder case there was no error in the judge's instructions
  to the jury on the burden of proof with respect to the issues of self-
  defense, excessive force, malice, and provocation. [841-846]
Certain questioning of witnesses and comments by the judge during the
  trial of a murder case did not deprive the defendant of a fair trial
  especially in view of the judge's instructions to the jury which tended
  to ameliorate any adverse effect that his remarks may have had and in
  view of the favorable impression created by the defendant's refusal, in
  the face of judicial interrogation, to reveal the identity of the man who
  had given him the gun used in the killings. [846-849]
At a murder trial at which the defendant testified that he fired two shots
  intending to hit someone and prosecution witnesses testified that the
  defendant fired at three unarmed men, none of whom had come into
  physical contact with him, there was sufficient evidence to warrant a
  finding of malice beyond a reasonable doubt although the defendant
  also testified that one of the victims was armed with a beer bottle and
  had grabbed his jacket. [849-850]

INDICTMENTS found and returned in the Superior Court
on February 6, 1975.

The cases were tried before *Keating, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Douglas Watson* for the defendant.

*Robert M. Raciti,* Assistant District Attorney, for the
Commonwealth.

WILKINS, J.   The defendant appeals from two convictions
of murder in the second degree, and convictions of unlaw-
fully carrying a firearm and of armed assault with intent to

murder.[1]  He argues three assignments of error in support of his claim for a new trial and, each of those failing, asks that we direct the entry of verdicts of guilty of manslaughter on the murder convictions pursuant to our authority under G. L. c. 278, § 33E.  We affirm the convictions and find no justification for directing the entry of verdicts of manslaughter in lieu of the verdicts of guilty of murder in the second degree.  As we consider the defendant's various arguments, we shall recite such facts as are necessary to their resolution.

1.  We turn first to the defendant's claim that the judge's charge erroneously placed the burden of proof on the defendant with respect to the issues of self-defense, excessive force, malice, and provocation.  The defendant admitted that he shot the three victims at a bar in Everett in the early morning of December 13, 1974.  The case was tried basically on the issues of whether the defendant (a) acted in self-defense, warranting a finding of not guilty, (b) used excessive force in circumstances in which he was justified in acting to protect himself, (c) acted with malice aforethought, or (d) acted on reasonable provocation, reducing the crime from murder to manslaughter.  Experienced defense counsel, who is not appellate counsel, made no request for instructions and raised no objection to the judge's charge to the jury.  The trial took place in April, 1976.

It is incontrovertible that the burden is on the Commonwealth to prove or disprove beyond a reasonable doubt each

---

[1] Although the defendant claimed an appeal from the judge's action on the charge of unlawfully carrying a firearm, the judge placed the matter on file, the "defendant not objecting thereto."  Only the second issue argued bears on this charge.  Our decision on that issue makes irrelevant the question whether we should pass on the defendant's appeal as to a charge placed on file with his consent.  See *Commonwealth* v. *Boone,* 356 Mass. 85, 88 (1969), and cases cited.  We note, however, that the judge had no discretion to place on file a conviction for unlawfully carrying a firearm.  See G. L. c. 269, § 10 (*a*), as appearing in St. 1975, c. 113, § 2.

In the conclusion of his brief, the defendant asks only for a new trial or for § 33E relief as to "his conviction[s] of Murder in the second degree." What we decide concerning the murder convictions also disposes of any appellate challenge to his conviction of armed assault with intent to murder.

of the elements constituting the crime of murder that were in issue in this case. *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 691-692 (1976) (self-defense). *Commonwealth* v. *Stokes,* 374 Mass. 583, 593 (1978) (excessive force). *Commonwealth* v. *Medina, ante* 565, 578 (1980) (malice). *Commonwealth* v. *Fluker,* 377 Mass. 123, 130 (1979) (provocation). It is also settled that, in any case tried before our decision in *Commonwealth* v. *Rodriguez, supra,* "this court will review the constitutional adequacy of the instructions to the jury as to the burden of proof . . . where the evidence adequately raises the issues of self-defense or provocation, even though the defendant addressed no objections or exceptions to that issue." *Commonwealth* v. *Collins,* 374 Mass. 596, 599 (1978).[2]

Although we shall examine individually the judge's instructions on self-defense, excessive force, malice, and provocation, the true "test of the charge is the impression created by it as a whole." *Commonwealth* v. *Benders,* 361 Mass. 704, 707 (1972). See *Commonwealth* v. *Fluker, supra* at 129-130, and cases cited. The over-all charge definitely placed the burden of proof on the Commonwealth. The judge charged the jury on the presumption of innocence and told them that the Commonwealth had to prove every

---

[2] On several occasions, we have reviewed jury charges on the issue of burden of proof in the absence of both any request for an instruction on that particular issue and any objection or exception to the charge as given. See, e.g., *Commonwealth* v. *Harrington,* 379 Mass. 446, 449-450 (1980); *Connolly* v. *Commonwealth,* 377 Mass. 527, 530-531 (1979); *Commonwealth* v. *Stokes,* 374 Mass. 583, 587-590 (1978). However, we have indicated that we shall bring greater expectations to a judge's charge made after the decisions in *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), and *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976). *Gagne* v. *Commonwealth,* 375 Mass. 417, 420 n.2 (1978). The same increased expectations appropriately arise as to trial counsel's efforts to preserve the defendant's appellate rights. *Commonwealth* v. *Medina, ante* 565, 577 n.5 (1980). See *Commonwealth* v. *Fluker,* 377 Mass. 123, 131 (1979), a case tried after *Commonwealth* v. *Rodriguez, supra,* in which the defendant's failure to request an instruction on burden of proof regarding provocation or to object specifically to the judge's charge on that issue precluded appellate review.

essential element of the crimes charged in the indictments. He gave extensive instructions on the Commonwealth's burden of proof beyond a reasonable doubt and stated that "[t]hat burden never shifts." Most importantly, the judge emphasized in his charge that the defendant was to receive the benefit of any reasonable doubt. Considering the charge as a whole in relation to the specific portions of it that we are about to discuss, we conclude that there was no error on the issue of burden of proof.

(a) *Self-defense.* The judge charged the jury concerning the burden of proof on self-defense as follows:

"You have had raised here the issue of self defense. Many of you might have the opinion that the defendant is raising here the issue of self defense and he, therefore, has the burden of proving it. That is not so. It is the burden of the Commonwealth, as I told you, to prove every essential element here. That burden never shifts and the evidence produced by the defendant if it has satisfied you that this was in fact justifiable homicide, as I shall explain it, then the Commonwealth has failed to prove beyond a reasonable doubt that it was an unlawful killing. Therefore, the defendant would be entitled to a not guilty, not because he sustained the burden of proving it was in self defense but because the Commonwealth didn't succeed in proving it was unlawful."

These instructions made clear to the jury that the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant had not acted in self-defense. Although the language "if it has satisfied you" is regrettable (see *Commonwealth* v. *Rodriguez,* 370 Mass. at 690-691 & n.8), it did not shift the burden of proof to the defendant on the issue of self-defense. See *Commonwealth* v. *Medina,* *supra* at 578. One isolated suggestion that the jury be "satisfied" with the evidence on self-defense in order to acquit will not invalidate a charge that overcame and outweighed any such suggestion both by an initially correct instruction and by the language of the instructions considered as a whole. See *Gibson* v. *Commonwealth,* 377 Mass. 539, 542-543 (1979); *Connolly* v. *Commonwealth,* 377 Mass.

527, 535 (1979). In fact, the judge's charge on the burden of disproving self-defense is similar to language in other jury charges that has withstood constitutional challenge. See *Lannon* v. *Commonwealth*, 379 Mass. 786, 791-792 (1980); *Commonwealth* v. *Cobb*, 379 Mass. 456, 467-468 (1980); *Commonwealth* v. *Harris*, 376 Mass. 201, 210-211 (1978).

(b) *Excessive force.* The judge's instructions on excessive force were given in conjunction with the preceding charge on self-defense. Because the trial judge gave an adequate and accurate charge on the Commonwealth's burden of disproving self-defense, he was not required to repeat the same instruction with regard to excessive force. See *Gibson* v. *Commonwealth*, 377 Mass. 539, 540 (1979); *Commonwealth* v. *Redmond*, 357 Mass. 333, 342 (1970). The judge did instruct the jury that if the defendant had been acting in self-defense but used excessive force, the crime would be manslaughter, not murder. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211-212 (1966). Thus, the jury's verdict of murder in the second degree impliedly rejected any theory of self-defense. See *Commonwealth* v. *Hicks*, 356 Mass. 442, 445 (1969). If the jury found that the Commonwealth had failed to disprove self-defense, but then incorrectly placed the burden of disproving excessive force on the defendant, the verdict would have been manslaughter. Once the Commonwealth has proved beyond a reasonable doubt that the defendant did not act in self-defense, the issue of excessive force becomes irrelevant.

(c) *Malice.* After giving thorough instructions on the Commonwealth's burden of proving the defendant's guilt beyond a reasonable doubt, the judge defined murder as "the unlawful killing of another with malice aforethought" and stated that "the ingredient malice is an ingredient of murder common to both first and second degree." Subsequently, he told the jury that "in order to find murder in the first degree you must have the crime of murder to prove, which means malice and if . . . [there was] deliberate . . . premeditation, then it is murder in the first degree." The logical implication of these statements is that malice is one

of the essential elements of murder that the Commonwealth was required to prove. Nowhere did the judge state that the defendant bore the burden of disproving malice. See *Gagne* v. *Commonwealth,* 375 Mass. 417, 421 (1978). The judge did not tell the jury that the defendant had to prove or disprove anything with respect to malice. See *Gibson* v. *Commonwealth,* 377 Mass. 539, 541 (1979). The judge summed up his charge on malice by saying, "If you don't find malice aforethought as I have tried to explain to you, you don't have murder." This statement indicated that the jury were required to find malice in order to convict of murder; it did not imply that the jury had to find an absence of malice in order to acquit of murder. Contrast *Connolly* v. *Commonwealth,* 377 Mass. 527, 532-533 (1979); *Commonwealth* v. *Harrington,* 379 Mass. 446, 453 & n.3, 454 (1980).

At one point in the judge's fifty-page charge to the jury, he referred to a "presumption of malice aforethought" that arises "[w]hen the killing is caused by the intentional use of a deadly weapon." However, the judge also stated that "the circumstances which attend the killing may be shown to rebut that presumption." Contrast *Sandstrom* v. *Montana,* 442 U.S. 510, 517 (1979). Elsewhere in his charge, the judge referred to "implied malice," a "[r]easonable inference" of malice and told the jury that malice "may be implied from an act." In another part of the instructions, he correctly explained the meaning of inference with respect to intent. The judge apparently used the word "presumption" interchangeably with "permissible inference,"[3] but it was otherwise evident from his charge that the Commonwealth retained the burden of proving every element of the crime, including malice, beyond a reasonable doubt. See *Commonwealth* v. *Medina, ante* 565, 578 (1980). *Common-*

---

[3] The judge would have been correct in stating that the jury would be warranted in viewing the intentional use of a deadly weapon as giving rise to a permissible inference of malice. See *Commonwealth* v. *Greene,* 372 Mass. 517, 519-520 (1977); *Commonwealth* v. *Johnson,* 372 Mass. 185, 192 (1977).

wealth v. *McInerney,* 373 Mass. 136, 149 (1977). Contrast *Commonwealth* v. *Callahan, ante* 821, 823-825 (1980).

(d) *Provocation.* The judge did not specifically repeat his instruction on the Commonwealth's burden of proof when he charged the jury on the issue of provocation. However, he was not constitutionally required to do so in the circumstances. See *Connolly* v. *Commonwealth,* 377 Mass. 527, 530-531 (1979); *Commonwealth* v. *Stokes,* 374 Mass. 583, 590-591 (1978). The judge correctly stated the Commonwealth's burden of proof at the outset of his instructions and reiterated during his remarks on self-defense that the Commonwealth retains the burden of proving every essential element of the crime beyond a reasonable doubt. Although the judge could have restated the Commonwealth's burden of proof during his instructions on malice and on provocation, "the law does not require repetition of the same thought at each turn." *Commonwealth* v. *Peters,* 372 Mass. 319, 324 (1977). The judge's explanation of the concept of provocation was accurate and complete. He emphasized that provocation and malice were mutually exclusive. See *id.* at 325. Nothing in his remarks on provocation was inconsistent with his statements that the Commonwealth bore the burden of proof.

2. The defendant argues that the judge made prejudicial comments which denied the defendant a fair trial. Defense counsel did not object to, or seek a mistrial because of, any comments that the defendant now challenges on appeal. While we understand the natural reluctance of trial counsel to object to questions or comments coming from a judge, sometimes trial counsel's duty to protect his client's rights requires him to object, preferably at the bench out of the jury's hearing. See *Commonwealth* v. *Fiore,* 364 Mass. 819, 826 & n.1 (1974). Because the transcript cannot disclose the tone of a judge's voice or his manner in making comments or asking questions, appellate judges are not always able to assess the impact of a judge's action. On the other hand, the effect on the jury of whatever a judge says or does may be significant. See *Commonwealth* v. *Sneed,*

376 Mass. 867, 869-870 (1978). Trial judges should refrain as far as reasonably possible from making critical comments before the jury. See ABA Standards Relating to Trial by Jury 15-4.9 (Approved Draft 1978). Of course there may be occasions in which a trial judge quite appropriately asks questions to clarify a point, to prevent perjury, or to develop trustworthy testimony. *Commonwealth* v. *Festa,* 369 Mass. 419, 423 (1976). A judge, however, should use this power to ask questions with restraint. *Commonwealth* v. *Hanscomb,* 367 Mass. 726, 732 (1975).

The judge made several personal observations in the course of the trial, not all of them directed against the defendant or his counsel.[4] The judge was rightly concerned about the slow pace of the trial. His criticisms in some instances should have been made out of the presence of the jury. Other comments, however, were clearly warranted.

The judge also posed a number of questions to both prosecution witnesses and defense witnesses. In at least one instance, a question from the judge that may have implied his incredulity actually aided the defendant in clarifying his testimony. See *Commonwealth* v. *Dias,* 373 Mass. 412, 415-417 (1977). However, extensive examination of witnesses by the judge during trial is not to be encouraged. *Commonwealth* v. *Campbell,* 371 Mass. 40, 45 (1976). The possibility of prejudice arises especially in a criminal case where the judge's questions may unintentionally have the effect of impeaching the defendant or defense witnesses. We note that the judge's instructions to the jury tended to ameliorate any adverse effect that his remarks may have had on the jury.[5] *Commonwealth* v. *Dias, supra* at 417.

---

[4] Toward the end of the trial, the judge said to the prosecutor: "Come on, hurry up with your examination, such as it is." After the judge excluded a prosecutor's question, the following appears in the transcript: "[Prosecutor]. With all respect, Your Honor —." "[The judge]. All respect nothing." Earlier this appears: "[Prosecutor]. If I may cross-examine the witness, Your Honor." "[The judge]. If that is what you are calling it, go ahead."

[5] At the beginning of his charge, the judge stated: "[P]lease don't for a moment assume from any comments I may make to counsel, or any col-

One particular matter warrants separate discussion. The defendant declined to answer a question from the judge as to who gave him the gun that he had used in the killings. The defendant consistently refused to disclose that person's identity, stating that he did not want to cause problems for the man, who had two children. The judge persisted in seeking an answer, as shown in the portion of the transcript set forth in the margin,[6] without any objection from defense counsel. The judge himself initiated the questioning about the source of the gun, a matter that had no apparent relationship to the proof of any crime charged and, if it did, was for the prosecutor to demonstrate. The saving feature of this spontaneous judicial inquiry in terms of its impact on the jury, in so far as can be derived from the transcript, is the favorable impression created by the defendant's forceful defense of a man he wanted to protect in the face of an imposing judicial interrogation. Trial counsel's failure to come to the defense of his client can only be explained by his tactical judgment that what occurred was not significantly prejudicial to his client.

---

loquy between counsel and me that I have any opinion or that I have taken a position in this case, because if I have and I have so indicated to you, you have a right to resent my intrusion into your prerogative because I can't put my view on you and that is the system and I have no view . . . .

"I might ask a question. You are not to give that question any more emphasis or think because it was asked by the Court it is to be considered important by you. It may well be a matter of curiosity. So don't place any emphasis, don't guesswork my thoughts on the case because you would be ducking your duty, which is to decide this case in your mind and then hopefully your twelve minds can come to a conclusion."

[6]"THE COURT: He is not in trouble by the mere fact of giving you a gun, I assure you.

"Is there something you know about the gun?

"THE WITNESS: No, it is just a regular gun.

"THE COURT: Who gave you the gun?

"THE WITNESS: I am sorry, I don't mean to be fresh.

"THE COURT: You are being in contempt. I am asking you who gave you the gun. I assure you there is no action going to be taken against anybody who gave it to you. Who was it?

"THE WITNESS: I am sorry, I don't want to say it.

"THE COURT: Why?

"THE WITNESS: I can't see getting the man involved at all.

"THE COURT: He is not involved. Go ahead, Mr. [Prosecutor]."

In light of the delicate problem that objections to a judge's actions present to defense counsel, we do not weigh heavily against the defendant the absence of objections in each instance. Nonetheless, the total absence of any objection from experienced defense counsel cannot be ignored in our attempt to determine the collective effect of comments and questions from the judge.[7] Because there were no objections to the various comments and questions from the judge, our review is limited to our obligation under G. L. c. 278, § 33E, to determine whether justice requires a new trial. Thus, we would reverse the convictions only if there were a showing of grave prejudice or a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Richmond,* 379 Mass. 557, 562 (1980). On a reading of the entire transcript, we see no ground for concluding that the defendant did not receive a fair trial. See *Commonwealth* v. *Festa,* 369 Mass. 419, 422-423 (1976), and cases cited.

3. The defendant claims that he was entitled to a directed verdict on so much of the indictments as charged murder. He argues that his intent to use force arose "in the heat of a sudden affray" and that he acted in response to reasonable provocation from other patrons in the bar. Accordingly, he asserts that any showing of malice was negated and, thus, that the Commonwealth failed to prove any crime greater than manslaughter. We conclude that there was sufficient evidence of malice to warrant a finding that the defendant was guilty of murder in the second degree.

The defendant admitted twice in his testimony that he fired two shots intending to hit someone and that those shots caused the death of two victims. Both these victims were shot through the heart. Although the defendant testified that one of the victims was armed with a beer bottle and had grabbed his jacket, prosecution witnesses testified that the defendant fired at three unarmed men, none of whom had come into physical contact with him.

---

[7] We note that, at one point, the prosecutor objected, at a bench conference: "It is making me unhappy there is this dialogue between Your Honor and the defense counsel, because this may have some effect on the jury."

The jury could believe the defendant's statement that he intended to injure the victims and disbelieve other parts of his testimony; they were not required to accept completely the defendant's version of the facts. *Commonwealth* v. *McInerney,* 373 Mass. 136, 144-145 (1977). An intention to inflict injury on a person without justification or palliation is malicious within the meaning of the law. *Commonwealth* v. *Mangum,* 357 Mass. 76, 85 (1970). The Commonwealth is not required to show that the defendant had an actual intent to kill in order to prove the element of malice aforethought. *Commonwealth* v. *McInerney, supra* at 141, and cases cited. The jury could also view the defendant's intentional use of a deadly weapon as giving rise to an inference of malice. *Commonwealth* v. *Greene,* 372 Mass. 517, 519 (1977). *Commonwealth* v. *Johnson,* 372 Mass. 185, 192 (1977). Certainly, this inference taken together with the defendant's professed intention to injure both victims was sufficient to warrant a finding of malice beyond a reasonable doubt.

4. Considering the entire case, we decline to exercise our power under G. L. c. 278, § 33E, to order a new trial or to require the entry of a verdict of a lesser degree of guilt on the convictions of murder in the second degree. See *Commonwealth* v. *Bowman,* 373 Mass. 760 (1977).

*Judgments affirmed.*