## COMMONWEALTH *vs.* ERVIN JOHNSON.

Suffolk. March 2, 1999. - June 21, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & IRELAND, JJ.

*Practice, Criminal,* Argument by prosecutor, Comment by prosecutor, Instructions to jury, Conduct of judge, Assistance of counsel, Capital case. *Evidence,* Hearsay, Cumulative evidence. *Judge. Homicide. Mental Impairment.*

At a murder trial, there was no error in the prosecutor's opening remarks previewing the evidence she expected to introduce. [747-748]

At a murder trial, no prejudice resulted from the improper introduction in evidence of an inflammatory photograph, in light of the judge's instruction, the evidence at trial, and the overwhelming case against the defendant. [750]

At the trial of an indictment for murder in the first degree, no substantial risk of a miscarriage of justice arose from comments in the prosecutor's closing argument [748-749, 751]; from the admission in evidence of hearsay that was merely cumulative of other evidence, in light of the overwhelming evidence against the defendant [749-750]; or from the prosecutor's proper argument from the evidence [750-751].

At a murder trial, any adverse inference the jury might have drawn from seeing the judge walk away from defense counsel who was still arguing at sidebar was ameliorated by the judge's thorough and explicit curative instructions. [751-753]

The judge at a murder trial did not err in declining to reinstruct the jury on mental impairment when reinstructing the jury in response to their question regarding the elements of murder in the first degree and the theories of premeditation and extreme atrocity or cruelty. [753-754]

At a murder trial, the judge's instructions on the third prong of malice were correct and defense counsel did not render ineffective assistance by failing to object to those instructions. [754]

No substantial likelihood of a miscarriage of justice was created by any alleged ineffective assistance of defense counsel at a murder trial. [754-755]

INDICTMENT found and returned in the Superior Court Department on October 12, 1995.

The case was tried before *James D. McDaniel, Jr.,* J.

*Harry L. Miles* for the defendant.

*Stephen D. Fuller,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was convicted of murder in the first degree by reason of extreme atrocity or cruelty (G. L. c. 265, § 1) and of violating an abuse prevention order (G. L. c. 209A, § 7).[1] On appeal,[2] the defendant contends that (1) the prosecutor engaged in improper conduct; (2) the judge's alleged misconduct denied him a fair trial; (3) the judge erred in refusing to reinstruct the jury regarding the evidence of the defendant's mental impairment; and (4) defense counsel rendered ineffective assistance. The defendant further urges that we exercise our power under G. L. c. 278, § 33E, and order a new trial or reduce his murder conviction to a lesser degree of guilt. We affirm the conviction and conclude that there is no reason to exercise our power under G. L. c. 278, § 33E.

*Facts.* We summarize the evidence in the light most favorable to the Commonwealth. The defendant and the victim lived together. In May, 1995, four months before the victim's murder, she gave birth to their son. In the course of their relationship the defendant physically abused the victim and isolated her from her family. On September 11, 1995, after the victim obtained a protective order against the defendant, two Boston police officers accompanied the victim back to her apartment, where they served the defendant with the protective order. The defendant became extremely angry, collected some of his belongings, and told the victim that he would be back. The officers reminded the defendant that, if he returned, he would be placed under arrest.

After staying a few days with her sister, the victim moved back to her apartment with a male friend. On September 19, 1995, at approximately 5:45 P.M., police officers, responding to a radio call, arrived at the victim's apartment where they found the victim half conscious, lying on the kitchen floor, bleeding profusely from several stab wounds. The victim's son was crying in a swing seat in the living room. As one of the officers was trying to stop the victim's bleeding, she indicated that her former boy friend was the one who injured her.

The victim was taken to a hospital emergency room where,

---

[1] Although the Commonwealth proceeded at trial on theories of deliberate premeditation and extreme atrocity or cruelty, the jury convicted the defendant only on the latter theory.

[2] The defendant appeals from his conviction of murder in the first degree by reason of extreme atrocity or cruelty. He does not appeal from his conviction of violating a protective order issued pursuant to G. L. c. 209A.

after one hour and forty minutes of surgery, she was pronounced dead. An autopsy revealed that the victim suffered twenty separate wounds, which could have been inflicted with a knife found in her apartment.

The defendant, after being arrested on an unrelated charge and receiving his Miranda rights, admitted stabbing the victim. He said he had gone to the apartment to see his son and to see whether he and the victim had a future together; when he saw men's clothing in the bedroom closet, "something happened" and he "lost it."

At trial, the defendant admitted that he killed the victim. He argued that he was only guilty of manslaughter or, at most, murder in the second degree because of an alleged mental impairment. In support of this theory of defense, the defendant's mother testified that, when the defendant was nine months old, he received an injury which caused him to stop breathing and necessitated his being taken to a hospital where he was resuscitated. The defense also presented a forensic pathologist who testified that the defendant had an I.Q. of sixty-eight, or "the intellectual level of a person with mild mental retardation." He also testified that the defendant suffered mild to moderate brain damage including frontal lobe damage, which, he opined, was consistent with the incident recounted by the defendant's mother. The witness further stated that frontal lobe damage impairs a person's ability to control his impulses, such that once a person started acting on that impulse, he would be unable to stop himself.

1. *Alleged prosecutorial misconduct.* The defendant argues that the prosecutor created reversible error by inflammatory argument, stating facts not in evidence, and inappropriately commenting on the defendant's failure to produce evidence. The defendant objected to the prosecutor's opening statement and to the admission of a photograph, but failed to object to the other errors raised on appeal. We review those objections which were made at trial to determine whether the alleged errors constituted prejudicial error. *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997), *S.C.*, 427 Mass. 298 (1998). With respect to those objections raised for the first time on appeal, "our review is limited to determining whether there has been a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Lyons*, 426 Mass. 466, 471 (1998).

a. *Inflammatory statements and evidence.* The defendant

maintains that he was so prejudiced by the prosecutor's improper appeal to the jury's sympathy in her opening statement, in the introduction of improper evidence, and in her closing argument, that a new trial is required.

(1) *The opening.* The defendant points to the prosecutor's remarks during her opening statement regarding the presence of the victim's child stating, "Baby Matthew in his little swing seat in the living room, right nearby, and [the victim] underneath her kitchen table, whimpering." He also points to the prosecutor's characterization of the case as one of " 'domestic violence'; of an abusive relationship; of a battered and bruised woman." The defendant contends that these remarks overstepped the bounds of zealous advocacy and appealed excessively to the jury's sympathy.

"Generally, a prosecutor in a criminal action may state anything in [her] opening argument that [she] expects to be able to prove by evidence." *Commonwealth* v. *Cohen*, 412 Mass. 375, 382 (1992). "The prosecutor may argue inferences from the evidence favorable to [her] case." *Commonwealth* v. *Lyons*, *supra* at 472. The prosecution's theory of the case was murder in the first degree based on deliberate premeditation and extreme atrocity or cruelty. The prosecutor's remarks concerning the presence of the victim's son and the viciousness of the crime were not improper because this evidence was relevant to the determination whether the defendant's actions constituted extreme atrocity or cruelty. *Commonwealth* v. *Wilson*, 427 Mass. 336, 351 (1998) ("the prosecutor's references to the gruesomeness of the crime[] were not improper here, because the gruesomeness of the crime[] and the suffering of the victim[] were relevant to the issue whether the defendant's actions constituted extreme atrocity or cruelty"); *Commonwealth* v. *Murphy*, 426 Mass. 395, 402 (1998) ("[t]he evidence that the victim's young son was in the [room] and possibly witnessed her assault and death was relevant to establish the victim's own emotional suffering"). See *Commonwealth* v. *Lyons*, *supra*.

(2) *The closing.* Similarly, the defendant's contention that the prosecutor's closing argument excessively appealed to the emotions of the jury is also unavailing. Because defense counsel did not object to the prosecutor's closing argument, our review is limited to "whether there is a substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Payne*,

426 Mass. 692, 697 (1998), quoting *Commonwealth* v. *Barros*, 425 Mass. 572, 582 (1997). "Under that standard, we assess the [statement] at issue 'in light of the entire argument, the judge's instructions, and the evidence at trial.' " *Commonwealth* v. *Payne, supra,* quoting *Commonwealth* v. *Fryar,* 425 Mass. 237, 250, cert. denied, 522 U.S. 1033 (1997), and cases cited.

The defendant points to the prosecutor's description of the murder as a "bloody massacre." As we have noted previously " '[t]o the degree the recitation of the evidence was inflammatory, that was inherent in the odious . . . nature of the crime[s] committed.' *Commonwealth* v. *Sanchez,* 405 Mass. 369, 376 (1989). . . . The prosecutor's remarks were characteristic of 'enthusiastic rhetoric, strong advocacy, and excusable hyperbole,' and did not cross the line between fair and improper argument." *Commonwealth* v. *Lyons, supra* at 472, and cases cited. Moreover, the judge instructed the jury that they, as the fact finders, had to determine the facts solely based on evidence produced at trial, and that they were not to be swayed by prejudice or sympathy, fear, or personal likes or dislikes toward either side.

(3) *The evidence.* The defendant further argues that the prosecutor improperly introduced inflammatory evidence by having the victim's sister read a statement by the victim from her application for a protective order against the defendant, where she stated: "I asked the defendant to leave. He became very violent and threatening. And he said, if I left, don't ask him for child support. . . . And, when I come inside the courthouse, I won't be walking home alive." The defendant neither objected to the admission of the application for the protective order nor to the witness's reading from it.

The application for a protective order was inadmissible hearsay. See *Commonwealth* v. *Cormier,* 427 Mass. 446, 449 n.1 (1998) ("no hearsay exception for statements of deceased persons in criminal cases"). The Commonwealth fails to point to any hearsay exception making the statement admissible. The improperly admitted hearsay does not create a substantial likelihood of a miscarriage of justice, however, where the evidence was largely cumulative of other admitted evidence regarding the relationship between the defendant and the victim and where the evidence of the defendant's guilt was overwhelming. See *id; Commonwealth* v. *Wilson, supra* at 348-349; *Commonwealth* v. *Arce,* 426 Mass. 601, 603 (1998). Furthermore, the hearsay had

no bearing on the defendant's sole defense of mental impairment. See *Commonwealth* v. *Jenner*, 426 Mass. 163, 165-166 (1997), and cases cited.

There is also no proper justification for the introduction of a photograph of the child's crib, empty except for a teddy bear. In speaking of photographs depicting the victim after her death the judge instructed the jury: "Each defendant is entitled to a verdict based solely on the evidence and not one based on pity for the alleged victim which might be occasioned by the photographs." While this instruction could have been more to the point, we deem it sufficient to dispel any prejudice arising from the photograph in light of the other evidence of the child's presence at the murder scene and the overwhelming evidence of the defendant's guilt. See *Commonwealth* v. *Wilson, supra.*

b. *Allegedly arguing facts not in evidence.* In her closing argument the prosecutor suggested that testimony from the defendant's expert witness was not to be accepted because the psychiatric tests could have been manipulated by the defendant. The thrust of the defendant's objection to this statement is that the prosecutor argued facts not in evidence and that her remarks constituted impermissible vouching. Our review is limited to whether the defendant's claim of error created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Mello*, 420 Mass. 375, 379-380 (1995).

"The prosecutor is entitled to argue the evidence and fair inferences to be drawn therefrom." *Commonwealth* v. *Paradise*, 405 Mass. 141, 152 (1989). Additionally, the prosecutor is allowed to assist jurors in analyzing the evidence and suggesting what conclusions they should draw from the evidence. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 553 (1990), and cases cited. Therefore, it was not improper for the prosecutor to suggest to the jury that the psychiatric tests, which formed the basis of the defense expert's classification of the defendant as mildly retarded, were not completely reliable and to ask the jurors to draw the inference that the defendant could have manipulated the results of the psychiatric examination. See *Commonwealth* v. *Cohen*, 412 Mass. 375, 388 (1992) ("It is not improper for the prosecutor to suggest to the jury that the defendant attempted to 'fool' them"); *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990) (prosecutor "may argue that defense witnesses, including the defendant, are not credible"). Furthermore, we "assume a 'certain measure of jury sophistica-

tion' in sorting out excessive claims." *Commonwealth* v. *Lyons*, *supra* at 474, quoting *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987).

c. *The alleged comments on the defendant's failure to produce evidence.* The defendant argues that the prosecutor's comments regarding the defendant's failure to produce medical evidence in support of his defense of mental impairment as a result of an injury he allegedly had sustained as a child created reversible error.[3]

Even assuming for the sake of argument that the prosecutor's remarks constituted an improper comment on a missing witness, "[s]uch impropriety, however, 'does not . . . ordinarily create a basis for reversal; it merely creates the risk that the attorney will be interrupted by the judge who may then give an unfavorable instruction.' " *Commonwealth* v. *Evans*, 42 Mass. App. Ct. 618, 623 (1997), quoting *Commonwealth* v. *Caldwell*, 36 Mass. App. Ct. 570, 582, *S.C.*, 418 Mass. 777 (1994). The defendant's failure to object "may provide some guidance as to whether a particular argument was prejudicial in the circumstances." *Commonwealth* v. *Kozec, supra* at 518 n.8. Moreover, the judge instructed the jury that "the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." Accordingly, we conclude that the prosecutor's closing remarks did not create a substantial likelihood of a miscarriage of justice.

2. *Alleged judicial misconduct.* The defendant further contends that the judge's inattention and moving away, as defense counsel was attempting to argue a motion at sidebar,

---

[3]During her closing argument, the prosecutor made the following remarks:

"I'd like to briefly address the defense in this case, [the defendant's mother] and Doctor Brown. [The defendant's mother] came in and talked to you. And I mean no disrespect to [the defendant's mother]. She is the mother of the defendant, and she is doing her best to protect him. But that doesn't mean you have to accept what she had to say because, as you recall, her story was that somehow the defendant had some injury that caused him to die; and, an hour later, miraculously, he was alive and released from the hospital and, alas, he was never the same.

"I would suggest that that is a ridiculous story. I would suggest there is no medical evidence. There is no doctor to back that up, even though she told you that he went to a hospital and he sought medical attention. He wasn't even kept overnight for observation, a nine-month-old infant who died for an hour? I would suggest that [the defendant's mother] is not an evil person. She's just a mother who is trying to protect her son."

denied him a fair trial. Defense counsel objected to the judge's conduct and moved for a mistrial.

"We have recognized that 'any judicial [conduct] is likely to be accorded substantial weight by the jury.' " *Commonwealth* v. *Sylvester*, 388 Mass. 749, 751 (1983), quoting *Commonwealth* v. *Sneed*, 376 Mass. 867, 870 (1978), and case cited. "[T]he particular danger created by such criticism in open court is the likelihood that it will 'impress the jury with the idea that [the judge] disfavors the attorney and, inferentially, the position the attorney represents.' " *Commonwealth* v. *Sylvester*, *supra*, quoting *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 17 (1980), and cases cited.

Any adverse inference that might have been created by the judge's conduct was cured by his very thorough and explicit instructions.[4] The judge's curative instructions were very similar to those given in *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 847 (1980),[5] where the court noted that, although the judge's criticisms in some instances should have been made out of the

---

[4]The judge instructed the jury as follows:

"In any event, if the Court during these proceedings has in any way intimated to you how I think you should decide this case, you should entirely disregard that. How you decide this case is entirely up to you. It doesn't matter to me how you decide the case. When this case is over, I go on and try another case. When that is over, I'll go on and try another case after that. There is no end to the cases that come before the Court, as you can well imagine.

"But, in any event, what I am trying to point out to you is this. If, during the course of this trial in some way, either by my body language or the rulings I may have made in this case or in my interaction between the lawyers in one way or another, whether it was heeded or not heeded, none of these matters have anything to do with how you decide the issues in the case. So, if you have seen anything like that happening in this case, entirely disregard that. That should not be considered or weighed in any way and . . . it would be unfortunate if you should determine anything that I have done in this case as bearing on how you decide the issues in this case. It would be unfair to either party in the case. So keep in mind from time to time during the course of the trial if you may have gotten some impression, well, the Judge is doing this or the Judge is doing this, or the Judge doesn't like this, or the Judge doesn't like that, that is all irrelevant. It doesn't have anything to do with how you decide the issues in this case."

[5]In *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 847-848 n.5 (1980), the judge gave the following curative instructions:

"[P]lease don't for a moment assume from any comments I may make to counsel, or any colloquy between counsel and me that I have an opinion or that I have taken a position in this case, because if I have and I have so

presence of the jury, his curative instructions tended to ameliorate any adverse effect his remarks may have had on the jury.[6] Although a judge should neither by his conduct nor by his words indicate his lack of impartiality, any prejudicial effect his actions may have had on the jury was remedied by his charge. See *Commonwealth* v. *Boyer*, 400 Mass. 52, 59-60 (1987); *Commonwealth* v. *Benoit*, 389 Mass. 411, 423 (1983); *Commonwealth* v. *Haley*, 363 Mass. 513, 522 (1973), *S.C.*, 413 Mass. 770 (1942).

3. *Jury instructions.* After the jury had deliberated for approximately two hours, they requested that the judge "define the law for first degree murder and its components therein for deliberate premeditation and the components for extreme atrocity or cruelty." Consequently, the judge reinstructed the jury as he had done in his main charge, including the definitions of the three prongs of malice. Despite defense counsel's request, the judge refused to reinstruct the jury on the relevance of mental impairment.

The judge was not required to reinstruct the jury on the defense of mental impairment. *Commonwealth* v. *Barros*, *supra* at 577. The judge adequately instructed the jury in his main charge to consider evidence of the defendant's alleged mental impairment in determining whether the Commonwealth had proved that the defendant acted with deliberate premeditation or extreme atrocity or cruelty. "The necessity, extent, and character of supplemental instructions in response to a jury request are matters within a trial judge's discretion." *Commonwealth* v. *O'Connor*, 407 Mass. 663, 667 (1990), citing *Commonwealth* v.

---

indicated to you, you have a right to resent my intrusion into your prerogative because I can't put my view on you and that is the system and I have no view . . . .

"I might ask a question. You are not to give that question any more emphasis or think because it was asked by the Court it is to be considered important by you. It may well be a matter of curiosity. So don't place any emphasis, don't guesswork my thoughts on the case because you would be ducking your duty, which is to decide this case in your mind and then hopefully your twelve minds can come to a conclusion."

[6]An important distinction between *Commonwealth* v. *Fitzgerald, supra,* and this case is that the judge's conduct occurred at a sidebar conference, which is generally considered outside the presence of the jury. See *Commonwealth* v. *Benoit*, 389 Mass. 411, 423 (1983). The defendant alleges, however, that the jury were still able to see the judge walking away, as he continued to argue his motion. Regardless, the judge's conduct was not so prejudicial as to warrant a reversal of the defendant's conviction.

*King,* 366 Mass. 6, 10 (1974), cert. denied sub nom. *McAlister* v. *Massachusetts,* 419 U.S. 1115 (1975). "[T]he judge was not required to repeat the whole or any part of his original instructions to them." *Commonwealth* v. *Barros, supra* at 577, quoting *Commonwealth* v. *King, supra* at 11.

The defendant also contends that his trial counsel was ineffective in failing to object to the judge's instruction with respect to the third prong of malice. Contrary to the defendant's assertion, the judge's charge neither misstated the subjective component of the third prong of malice, nor reduced the Commonwealth's burden of proof. The judge properly instructed the jury on the subjective component of the third prong (referring to "circumstances known to the defendant" and "the nature and extent of the defendant's knowledge of the circumstances at the time he acted") numerous times in the main and supplemental charge.[7] Moreover, the charge followed closely the language used in *Commonwealth* v. *Sama,* 411 Mass. 293, 298 (1991).

4. *Ineffective assistance of counsel.* "Appellate review of a conviction of murder in the first degree, regardless of whether a claim of ineffective assistance of counsel has been made, is governed by G. L. c. 278, § 33E. [See *Commonwealth* v. *Painten, ante* 536, 549 (1999); *Commonwealth* v. *Hung Tan Vo,* 427 Mass. 464, 469 (1998).] The question on appeal is whether, because of an [alleged] error by defense counsel, the prosecutor, or the judge, or for any other reason, there is a substantial likelihood of a miscarriage of justice unless relief is given. The burden is on the defendant to demonstrate that something inappropriate was likely to have unfairly influenced the jury's verdict. That standard of review, including an evaluation of trial counsel's performance, is more favorable to the defendant than the ineffective assistance of counsel test set forth in *Commonwealth* v. *Saferian,* [366 Mass. 89, 96 (1974)]. See *Commonwealth* v. *Burke,* 414 Mass. 252, 256-257 (1993); *Commonwealth* v. *MacKenzie,* 413 Mass. 498, 517 (1992); *Commonwealth* v. *Wright,* 411 Mass. 678, 681-682 & n.1

---

[7]At certain points in both the main charge and the supplemental charge the judge omitted the subjective component in his description of third prong malice. Additionally, at certain points, he erroneously included a reference to "death or injury" in his definition of the objective component of the third prong. The defendant does not challenge either of these errors. We conclude that these errors did not create a substantial likelihood of a miscarriage of justice, when viewed in the context of the entire charge and the evidence presented in this case.

(1992)." *Commonwealth* v. *Plant*, 417 Mass. 704, 715-716 .(1994).

The defendant's most substantial argument on appeal regarding his claim of ineffective assistance of counsel concerns defense counsel's failure to object to the admission of certain evidence of the relationship between the defendant and the victim, specific instances of abuse, and the victim's fear of the defendant. In light of the overwhelming evidence of the defendant's guilt, including the defendant's own confession, we conclude that the admission of this evidence did not result in a substantial likelihood of a miscarriage of justice.[8] We have reviewed the remaining arguments made by the defendant regarding his claim of ineffective assistance of counsel and conclude that the defendant has failed to show that, if the verdict is left undisturbed, a substantial likelihood of a miscarriage of justice will result. *Commonwealth* v. *Plant, supra* at 716.

5. *Relief under G. L. c. 278, § 33E.* The defendant requests that we order a new trial or reduce the verdict in light of the "combined weight of the errors." We have reviewed the entire record pursuant to G. L. c. 278, § 33E, and conclude that a reduction in the verdict or a new trial is not required.

*Judgment affirmed.*

---

[8]In the first part of this opinion, *supra* at 750, we have shown that, where a proper objection was raised to the improper admission of a photograph, no prejudice resulted.