COMMONWEALTH *vs.* PAUL W. CAMPBELL
(and three companion cases[1]).

Norfolk.     February 3, 1976. — September 2, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, &
WILKINS, JJ.

*Evidence,* Relevancy and materiality, Other offense, Of intent.   *Practice, Criminal,* Charge to jury, Questioning of witness by judge.

At a trial for breaking and entering in the nighttime with intent to commit larceny, testimony was properly admitted indicative of a general criminal intent of the defendant, a police officer, to engage in burglarious enterprises employing his specialized knowledge as a policeman, particularly since he offered the defense of entering the building for the lawful purpose of investigating possible criminal activity [42-43]; there was no error in charging the jury that testimony on other crimes could be considered only on the narrow issue of whether the defendant "might have been involved in some scheme or plan to get money from the various places with which he was familiar through his duties as a police officer, but that is all" [43].
At a trial for breaking and entering a restaurant against a police officer of a town, where the defendant testified that he was investigating a break-in at the restaurant when he was apprehended, there was no reversible error in the admission of evidence as to his knowledge of a series of unsolved breaks in the town in view of the substantial

[1] Of the companion cases one is against Paul W. Campbell and two are against Salvatore J. Tripolone.

evidence of his guilt and the judge's charge that there was no evidence which implicated the defendant in any other break-ins and that testimony with respect to them was for the jury's consideration "on one point only, whether [the defendant] was knowledgeable in how to handle breaks if he discovered them." [43-44]

There was no error at a criminal trial by reason of the number of questions asked of witnesses by the judge in addition to the more numerous questions asked by counsel where the judge in his charge stated that questions he asked had "no more significance than anybody else's questions." [44-45]

INDICTMENTS found and returned in the Superior Court on May 31, 1974.

The cases were tried before *Linscott, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Martin K. Leppo* for the defendants.

*Robert B. Russell,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendants Paul W. Campbell and Salvatore J. Tripolone were tried together on indictments charging each of them with breaking and entering a building in the nighttime with intent to commit larceny and possession of burglarious implements. The trial was made subject to G. L. c. 278, §§ 33A-33G. A jury found them guilty on all of the indictments and they were each subsequently given sentences to a house of correction for a term of two years on the charge of breaking and entering, execution being stayed pending appeal, and to the Massachusetts Correctional Institution at Walpole for a term of three to five years, suspended with a two-year probationary term from and after the first sentence, on the charge of possession of burglarious implements. We took the case on our own motion.

The defendants were policemen in the town of Braintree and were apprehended while in the course of burglarizing the Mai Tai restaurant in that town on February 10, 1974. The Braintree police had been alerted by one Fava, also a Braintree policeman, and they had staked out the restaurant on the night in question. Fava had met both the

defendants at approximately 3 A.M. on that early morning. They had gone to the defendant Campbell's private place of business to pick up the burglar's tools whence they departed to the Mai Tai restaurant. The defendant Tripolone forced open the front door, and he and Campbell went inside. Shortly thereafter the police chief and other Braintree police officers converged on the restaurant and arrested the defendants. While seventy-eight assignments of error were alleged on behalf of each defendant, only a number of them are pressed here, and we discuss them making reference to such other evidence adduced at the trial as may be necessary.

1. Error is alleged by the defendant Tripolone in that the judge permitted testimony as to other crimes allegedly committed by him. We are aware that commission by a defendant of an independent crime "cannot ordinarily be shown as evidence tending to show the commission of the crime charged." *Commonwealth* v. *Stone,* 321 Mass. 471, 473 (1947). See *Commonwealth* v. *Green,* 302 Mass. 547, 552 (1939). It would appear that the testimony of conversations between Fava and Tripolone was referring to other burglaries and robberies and was indicative of a general criminal intent on the part of Tripolone to engage in burglarious enterprises employing in part the specialized knowledge which was his as a policeman. The testimony demonstrated a common scheme and intent and falls within the law laid down in *Commonwealth* v. *Scott,* 123 Mass. 222 (1877). It cannot be considered vague or remote and, being relevant, was admissible. It is to be noted that the intent of these defendants on entering the restaurant on the night in question was crucial in this case. The Commonwealth on these indictments had the burden of proving that the intention of the defendants at that time was to commit a larceny. The defense offered was that Tripolone and Campbell, who were admittedly in the building immediately prior to their arrest, had entered the building for a lawful purpose, that of investigating what appeared to them to be a breaking and entering which they happened on while driving by the restaurant on the way to

Tripolone's apartment. In light of all the other evidence in the case this explanation may appear rather implausible; nevertheless, given the fact that these defendants were off-duty policemen who arguably had some responsibility to investigate possible criminal activity when they encountered it, such an explanation might have some appeal with jurors or at least serve to raise a reasonable doubt in the minds of some. The Commonwealth properly could introduce evidence of past, similar crimes which tended to rebut the defense of innocent intent and make more probable the existence of the requisite illegal intent, that of committing a larceny. See *Commonwealth* v. *Abbott Eng'r, Inc.,* 351 Mass. 568, 572-573 (1967); *Commonwealth* v. *Butynski,* 339 Mass. 151, 152-153 (1959); *Commonwealth* v. *Scott, supra;* 2 J. Wigmore, Evidence §§ 302, 348 (3d ed. 1940). The trial judge did not abuse his discretion in admitting this evidence.

2. Nor did the judge err in charging the jury that it was open to them to consider testimony on other crimes which Tripolone might have committed. He made it clear in his charge that he allowed Fava's testimony as to these crimes only on the narrow issue of whether Tripolone "might have been involved in some scheme or plan to get money from the various places with which he was familiar through his duties as a police officer, but that is all." He gave a further charge impressing on the jury that the defendants were not charged with any offenses other than those set forth in the indictments, and we see no error in the manner in which this issue was handled.

3. On behalf of the defendant Campbell, error was alleged in that the prosecutor was allowed by the judge to interrogate him concerning his knowledge of a series of unsolved breaks in the town of Braintree. In the judge's charge he stated that while there was testimony that Campbell knew of some other breaks, "I will instruct you that there is no testimony in this case upon which you could infer that ... Campbell was ever involved in any other breaks on any other occasion, and that that testimony is for your consideration on one point only, whether

he was knowledgeable in how to handle breaks if he discovered them. That is the only reason I let it in." It would appear that the judge in a bench conference out of the hearing of the jury indicated to counsel that this evidence would be admitted for the purpose of showing a common scheme and intent on the part of the defendant Campbell to utilize his specialized knowledge as a policeman to engage in burglarious enterprises. However, the judge apparently and correctly apprehended that the evidence which was produced lacked probative value as to that issue, and in his charge to the jury properly instructed them that there was no evidence which implicated Campbell in any other break-ins. While it perhaps would have been preferable if he had simply stopped there, his further instruction cannot be said to have seriously prejudiced the defendant Campbell. Campbell's competence "to handle breaks if he discovered them" was put in issue by his own testimony to the effect that he was assisting in an investigation of a break-in at the restaurant when he was apprehended. In fact, when limited to this purpose the evidence in question seems supportive of the defendant's position since it would indicate that Campbell was competent to investigate breaks and thus contribute at least marginally to the plausibility of the defendant's explanation of his activities that night. In any event, in light of the clear and explicit instruction that there was nothing from which the jury could infer that Campbell had participated in other break-ins and, given the other substantial evidence of guilt produced at trial, we are satisfied that there was no reversible error in the admission of this evidence or the judge's charge relative to it.

4. The defendants argue strenuously that the judge demonstrated a bias which precluded the possibility of a fair trial for them. The Commonwealth has favored us with a set of statistics from which it appears that in questioning Fava some 1,725 questions were asked by counsel, with an additional eighty-five being asked by the judge. Reference is also made to another witness of whom the judge asked some twenty-five questions, with counsel asking a total of

901. We are not unmindful of the observation of Francis Bacon on the "overspeaking judge," and we have not favored except in extenuating circumstances the takeover of questioning by a judge during the course of trial. Of course a judge has a right to question any witness "provided the examination is not partisan or biased." See *Commonwealth* v. *Oates*, 327 Mass. 497, 500 (1951); 3 J. Wigmore, Evidence § 784 (Chadbourn rev. 1970). Much depends on the nature of the proceeding. We have had occasion to state, for instance, that the presiding judge in a case in small claims procedure may take active charge of the proceedings and examine witnesses. *McLaughlin* v. *Municipal Court of the Roxbury Dist.*, 308 Mass. 397, 405-406 (1941). We have said further that even under formal procedure the judge "ought to be always the guiding spirit and controlling mind at a trial." *Goldman* v. *Ashkins*, 266 Mass. 374, 380 (1929). We discern no error in the action of the judge in this instance and suggest only that the rule of reason on how much a judge should move into the interrogation of witnesses in the light of the foregoing stated law will undoubtedly be followed by most judges. We further note that the judge in his charge to the jury properly instructed them to the effect that, "Sometimes I ask questions myself. You are not to put any special significance to the fact or to the questions I ask. . . . [T]hey have no more significance than anybody else's questions." See *Commonwealth* v. *Festa*, 369 Mass. 419 (1976); *Commonwealth* v. *Oates, supra* at 500. Nor do we find error in the denial by the judge of a series of requests by defendants' counsel to be heard. These denials were productive of no apparent prejudice. The same can be said for the denial by the judge of repeated requests by defendants' counsel for a voir dire of witnesses.

5. While several other assignments of error are pressed and argued, we see nothing in them to merit additional comment.

*Judgments affirmed.*