COMMONWEALTH *vs.* PAUL F. ORTON.

Suffolk.     September 14, 1976. — October 18, 1976.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Evidence,* Relevancy and materiality, Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver. *Practice, Criminal,* Mistrial.

At the trial of a defendant for endeavoring to intimidate a witness, the judge did not abuse his discretion in excluding testimony with respect to the outcome of the trial at which the witness was to testify. [595]

At a criminal trial, the judge did not err in admitting a statement made by the defendant to a police officer where a reasonable time had elapsed between an earlier warning and the defendant's refusal to talk until he had spoken with his attorney and a new set of warnings after which the defendant chose to make the statement. [595-596]

At the trial of a defendant charged with intimidating a witness and shooting him, the judge did not err in admitting in evidence bullets which had been fired at the victim a month prior to the shooting where there was evidence that the bullets were of the same caliber as ammunition which had been observed in the defendant's possession and where the defendant's statements to the victim warranted a finding that both events constituted a plan of intimidation. [596-597]

At a criminal trial, an improper question by the prosecutor to a defense witness did not require a mistrial where the judge excluded the question and instructed the jury to disregard it. [597]

INDICTMENTS found and returned in the Superior Court on January 7, 1975.

The cases were tried before *McLaughlin,* C.J.

*Alfred Paul Farese* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.   Following a jury trial held pursuant to G. L. c. 278, §§ 33A-33G, the defendant was convicted of assault and battery by means of a dangerous weapon (a handgun) (G. L. c. 265, § 15A) and endeavoring to intimi-

date a witness (G. L. c. 268, § 13B, as appearing in St.
1970, c. 177) and was sentenced. The appeal is before us
on assignments of error to the effect that the trial judge
erred in (1) excluding testimony offered to establish that
the defendant in a case in which the victim was to testify
had been found not guilty, (2) admitting a statement
made by the defendant to a police officer, (3) admitting
fragments of spent bullets recovered nearly a month prior
to the date of the crime alleged in the indictment and (4)
denying the defendant's motion for a mistrial following a
question put to a defense witness during cross-examina-
tion. There was no error.

There was evidence from which the jury could have
found that the victim had been employed for about two
years as a special police officer (security guard) at Com-
monwealth Pier and had known the defendant, a forklift
mechanic employed by a company which had an office on
the pier, for about the same length of time.

Prior to the time of the incidents to be described, the
victim had testified as a prosecution witness at a probable
cause hearing in a District Court in which one O'Brien
was charged with the larceny of frozen scallops from the
pier. That case was pending in the Superior Court at
the time of the incidents.[1] On November 26, 1974, while the
victim was on duty in the guard room at the pier, two rifle
shots were fired from a parking lot on an adjacent pier.
The bullets passed through the upper part of a window in
the guard room, embedding in the upper part of a wall.

On December 24, when the victim went to the guard
room to pick up his paycheck, the defendant and three
other persons, two of whom were guards, were in the room.
The defendant at that point was accusing a guard of doing
his job too well and trying to make a name for himself. He
told the guard, "Those bullet holes can come down for you
as well as for Paul" (the victim). He then pointed to the
two bullet holes in the wall and said to the victim, "You

---

[1] It would appear that O'Brien was bound over from the District
Court to the grand jury.

know, Paul, if you testify, those bullet holes are going to come down for you." The victim was then invited to the defendant's office, where the defendant stated, among other things, "If you testify against . . . [O'Brien], these guys are going to get you . . . These guys have long memories. They will get you no matter how long it takes, and your wife too . . . Do you think there is another guard on the waterfront dumb enough to testify against the driver of that truck? . . . Do you think these guys couldn't get you a month from now or a week from now?" The defendant walked away from the victim, saying, "or tonight." While making those statements the defendant shouted and became red in the face. He then drew a pistol from his jacket and shot the victim in the chest. The defendant was arrested and taken to a police station.

1. During the trial of the present case the defendant sought to introduce evidence that O'Brien had been acquitted in the Superior Court, which the judge refused to permit. Such evidence could only have been material to the indictment charging intimidation. The acts and statements upon which the prosecution relied to prove the intimidation charge had occurred prior to O'Brien's acquittal in the Superior Court. A question to be resolved by the jury was whether the defendant's acts and statements had been performed and uttered in order to influence the victim's testimony in the then upcoming trial of O'Brien. There was no error in excluding the offered testimony, as the outcome of the O'Brien trial was irrelevant to the issues in the case then before the court. Moreover, if there was some collateral relevance, the admission of such evidence was in the discretion of the judge. There was no abuse of discretion. *Commonwealth* v. *Greenberg*, 339 Mass. 557, 580-581 (1959). See *Commonwealth* v. *Lucas*, 332 Mass. 594, 600 (1955).

2. The defendant was given the Miranda warnings at the police station by a State police sergeant, following which the defendant indicated that he wished to talk. The defendant now contends that that custodial interrogation was inherently coercive (*Miranda* v. *Arizona*, 384 U. S.

436, 467-479 [1966]; *Schneckloth* v. *Bustamonte*, 412 U. S. 218, 225-226 [1973]) and that the lengthy statement which the defendant made to the sergeant should not have been admitted in evidence. Before that testimony was admitted, the judge held a voir dire following which he dictated detailed findings into the record which were to the effect that the defendant had been fully warned of his rights and had voluntarily chosen to talk with full knowledge and an intelligent understanding of his rights. There was no error. See *Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14, 17-21 (1974). That the defendant had previously stated to another officer that he did not wish to talk until he had spoken with his attorney did not alter the admissibility of the statement, as a reasonable time had elapsed between the earlier warning and refusal to talk, and a new set of warnings which had been given and understood in the interim. *Michigan* v. *Mosley*, 423 U. S. 96, 101-103 (1975).

3. The defendant contends that the spent bullets recovered from the wall in the guard room on November 27, 1974, were not relevant to the events of December 24, which gave rise to the charges against him. He asserts that the admission of the bullets was prejudicial in that the jury "would infer that the defendant had embarked upon a systematic plan to harass and threaten the victim and that this plan had its initiation on November 27." There was evidence that the bullets were of .30 caliber and that ammunition of that caliber had been observed in the defendant's locker at the pier. Furthermore, the defendant's statements to the victim warranted a finding that the firing of the bullets was part of a plan of intimidation and that that event, although occurring about a month earlier, was linked to the events of December 24 by those statements. The recovered bullets were relevant to the question of the reality of the defendant's threats. The bullets themselves were also relevant in the sense that they served to corroborate the earlier testimony to the effect that bullets had in fact been fired into the guard room. There was no error. See *Commonwealth* v. *Campbell*, 371 Mass. 40 (1976). Compare *Commonwealth* v. *Butynski*, 339 Mass. 151, 152-

153 (1959); *Commonwealth* v. *Baldassini,* 357 Mass. 670, 677-678 (1970).

4. During cross-examination of a defense witness the prosecutor asked, "Would it be fair to say, Mr. Cunniff, that the pier, over the years, over the last twenty-nine years, has had somewhat of a problem as far as larceny and thefts on the pier?" The defendant objected to the question and moved for a mistrial. The judge excluded the question but denied the motion. At the defendant's request, he instructed the jury to disregard the question. We are of the opinion that the instructions given were sufficiently clear and forceful to remove from the jury any harmful impression which the question might have caused. We see no reason not to observe the rule that "jurors are expected to follow instructions to disregard matters withdrawn from their consideration." *Commonwealth* v. *Eagan,* 357 Mass. 585, 589 (1970). There was no error.

*Judgments affirmed.*