COMMONWEALTH vs. FRANCISCO GONZALEZ.

Bristol. April 11, 1980. — May 14, 1980.

Present: HALE, C.J., KASS, & NOLAN, JJ.

*Evidence*, Cross-examination. *Practice, Criminal*, Instructions to jury.

There was no error at a trial for the distribution of a controlled substance
in sustaining the prosecutor's objections to defense counsel's questions
on cross-examination of a police officer concerning the relationship to
police of a civilian assisting them who did not testify and whose credi-
bility was not in issue. [726]

At the trial of a defendant who sold heroin to a police officer operating
undercover, the judge properly, fairly and clearly instructed the jury
on all phases of the law pertaining to entrapment, and he was not re-
quired to charge thereon in the exact words requested by the defend-
ant. [726-727]

At the trial of indictments, where the judge ordered the jury to disregard
and to dismiss from their minds both a question by the prosecutor on
redirect examination of a witness and the answer, this court had no
reason to believe that the jury did not follow the judge's instructions.
[727]

INDICTMENTS found and returned in the Superior Court
on November 9, 1976.

The cases were tried before *Ponte, J.*

*Thomas G. Hoffman* for the defendant.

*Lance J. Garth*, Assistant District Attorney, for the Com-
monwealth.

HALE, C.J. The defendant has appealed from convic-
tions on two indictments charging the distribution of heroin,
a controlled substance. G. L. c. 94C, § 32. We briefly
summarize the facts which could have been found by the
jury.

About 1:30 P.M. on April 30, 1976, Michael Dusoe, a
State police officer operating undercover, was driving a
motor vehicle in which he was accompanied by one Viera, a

civilian who was assisting Officer Dusoe in his search for dope pedlars. Observing the defendant walking along a street in New Bedford, Dusoe stopped the car, and the defendant got in. Using the argot of the drug subculture, Dusoe told the defendant that he wanted to buy $50 worth of heroin. The defendant directed Dusoe to drive to a named café, and Officer Dusoe did so. Upon arriving at the café, the defendant left the car for about ten minutes and returned with a tinfoil packet containing heroin, which he turned over to Officer Dusoe. The $50 purchase price had been paid to the defendant on the way to the café.

On May 5, 1976, a similar action occurred with the same characters in place, differing only in nonessential details. The defendant argues three issues which we discuss seriatim.

1. The defendant contends that the judge improperly limited cross-examination of a police officer concerning Viera's relationship to the police. After the officer had been asked whether and by whom Viera had been "offered any inducement or protection or assistance with his criminal matters," the witness responded affirmatively and named the officials making the offer. Two questions were then asked: "And what were those promises"; and "Would you classify Mr. Viera as an informant." Objections to the questions were sustained. There was no error. Viera was not called upon to testify as a witness, and his credibility was not an issue. Whether Viera was an informer and the details of the promises made to him for his assistance to the police were irrelevant to any issue in the trial.

2. The defendant claims that "the court erred by refusing the defendant's requested instruction concerning his state of mind at the time of the incidents." His argument on this point seems to be directed to the judge's instruction on the question of entrapment as a whole and thus goes well beyond the exception noted at the conclusion of the charge. We note that the judge used the words "state of mind" when instructing the jury on the element of intent. His main instructions and the additional instructions given at the request of the defendant made clear that, to convict, the

jury would have to find beyond a reasonable doubt that the defendant had the willingness and disposition to commit the crime at the time of the alleged entrapment. After reading the entire charge we are completely satisfied that the judge properly and fairly instructed the jury on all phases of the law pertaining to entrapment (see *Commonwealth* v. *Miller*, 361 Mass. 644, 650-653 [1972]) in language that could not be misunderstood by the jurors. The judge was not required to charge in the exact words of the request. *Commonwealth* v. *Edgerly*, 6 Mass. App. Ct. 241, 263 (1978).

3. During his redirect examination of Officer Dusoe, the prosecuting attorney asked whether Viera had been riding in his car "indicating to you various drug violators in the city of New Bedford," to which the witness responded affirmatively. He was then asked, "And did he indicate that Gonzalez was a narcotics violator and seller," and the witness answered, "He did." After a colloquy with the judge, defense counsel moved to strike the answer. The judge then ordered the jury to disregard both the question and answer and to dismiss them from their minds as though they had never heard them. There is no reason for us to believe that the jury did not follow the judge's instructions. *Commonwealth* v. *Orton*, 4 Mass. App. Ct. 593, 597 (1976). His counsel must have believed so as well, as he made no objection and took no exception to the judge's corrective action.

*Judgments affirmed.*