After a trial, a Juvenile Court judge found the mother and father of Yoshi and Adam unfit, and dispensed with the need for the parents' consent to adoption. The mother appealed and now argues that the judge incorrectly placed the burden on her at trial, that the judge's comments after the first day of trial demonstrated a lack of impartiality and undermined the mother's right to a fair trial, and that the judge gave undue weight to the children's existing placement with the preadoptive family.[3] We affirm.
Background. The trial judge issued an extensive decision that included 411 factual findings and thirty-four conclusions of law. In brief summary, the judge found that the mother had a demonstrated history of severe problems with alcohol and drug use throughout much of the lifetimes of the children, and that she was frequently unable to care for them or to attend to their needs. The mother also had a history of domestic violence with the father, including incidents in front of the children, and the mother had anger management issues such that she verbally abused the children. The mother had multiple relapses when she did seek treatment for her problems with alcohol and drug use, and she failed to follow through on key components of her service plans meant to address those issues, among others. While to her credit, as of the time of trial the mother had remained sober for almost three years, the mother had done so only in structured group home settings. Moreover, the group home that the mother lived in at the time of trial did not allow children.
Yoshi was born in December, 2006, and was first removed from the mother's custody by the Department of Children and Families (DCF) at six weeks old; Adam was born in December, 2007, while Yoshi was still in foster care. A trial regarding the mother's and father's parental rights as to Yoshi was held in 2008 and both parents regained custody. DCF became involved with the family again shortly thereafter, in August, 2009, as a result of new allegations of neglect of both children.
The children were removed from the mother's custody most recently in May, 2013.[4] DCF changed the goal from reunification to adoption in November, 2013, and the mother and father stipulated to unfitness at that time. DCF moved for a review and redetermination hearing in March, 2015, in order to terminate parental rights and dispense with the need for consent to adoption. At the time of trial the children had been living with the preadoptive parents for two years and out of the mother's care for a total of four and five and one-half years respectively. The children had shown marked improvements in their social and emotional development while living with the preadoptive parents.
The trial lasted for twenty nonconsecutive days from September, 2016, until May, 2017. The judge found the mother and father unfit and issued decrees dispensing with the need for their consent to adoption. The judge determined it was in the children's best interests to remain with their preadoptive parents, and included detailed findings on that subject as well. The judge found that visitation with the mother and the father was in the best interests of the children and ordered such visitation four times a year. The mother appealed.
Discussion. To terminate parental rights, a judge must find "clear and convincing evidence that the parent is unfit," Adoption of Ilona, 459 Mass. 53, 59 (2011), and that termination is in the child's best interests after considering "the ability, capacity and readiness of the child's parents ... to assume parental responsibility." Adoption of Elena, 446 Mass. 24, 31 (2006), quoting G. L. c. 210, § 3 (c ). On appeal the mother first argues that the judge improperly placed the burden on her to show "changed circumstances" since the initial determination of unfitness, citing to paragraph 28 of the judge's conclusions of law (stating "Mother and Father bear the burden of showing ... a change in circumstances since they were found unfit in November 2013"). Although this statement of the law was incorrect,[5] viewed in the context of her entire findings the judge's misstatement does not require a remand. Notably, in paragraph 3 of her conclusions of law the judge correctly stated that the burden of proof fell on DCF to show unfitness by clear and convincing evidence. Adoption of Ilona, 459 Mass. at 59. More importantly, the judge's extensive findings show careful attention to the evidence of the mother's unfitness. The findings address evidence that came from many sources over the course of trial, and demonstrate that the judge carefully considered the mother's circumstances right up to the time of trial. The mother was not prejudiced where the judge gave a correct statement of the law on another occasion, and where the judge's findings evidence her conclusion that DCF did in fact carry its initial and ultimate burden. See Adoption of Douglas, 473 Mass. 1024, 1029 n.12 (2016) (concluding error was harmless where judge's order amply supported by facts).
The mother next argues that the trial judge "fail[ed] to give fair consideration" to all of the evidence, asserting that the judge had made up her mind by the first day of trial. The mother focuses in particular on statements that the trial judge made during a lobby conference with counsel on the first day, at which the judge discussed possible resolutions short of reunification. Relying on Adoption of Tia, 73 Mass. App. Ct. 115, 121 (2008), the mother urges that the judge improperly engaged in a "weighted assessment of the evidence" long before the evidence was closed.
Certain of the judge's statements at the lobby conference are indeed concerning, as they echo the statements found inappropriate in Adoption of Tia, 73 Mass. App. Ct. at 120-121. The judge's comments could have been heard as an assessment of the likely outcome of the trial for the mother, even though the mother's testimony and the trial itself were far from complete. During that same lobby conference, however, the judge also stated that she would not "prejudge anything." Viewed in light of the evidence and findings as a whole, the statements do not warrant a retrial. As discussed above, the trial judge's findings and conclusions had a sound basis in the evidence, and those findings also demonstrated careful consideration of the entire record. Moreover, the mother's argument essentially challenges the impartiality of the judge, and as such it is an objection that should have been raised with the judge as soon as it was perceived; such a contention should not be held in abeyance until receipt of an adverse outcome. Adoption of Norbert, 83 Mass. App. Ct. 542, 545 (2013). Here the objection is raised for the first time on appeal; it was not raised to the trial judge.
Finally, the mother makes several arguments to the effect that the judge gave undue weight to the children's existing placement with a preadoptive family, and erred by basing her decision on the potential harm to the children from being removed from that family. For example, the mother suggests that Dr. Stein's expert testimony -- that another removal of the children to yet another living situation will cause them additional psychological harm -- was an "inadequate basis" to support termination, particularly given his limited interaction with the children. The mother also points to the judge's factual finding that the mother could not provide separate bedrooms for the children as an improper basis supporting termination.
The mother's arguments in this regard fail to account for the judge's many other detailed findings regarding the mother's unfitness and the children's best interests. Read in total, the judge's findings were animated primarily by the mother's demonstrated inability to remain sober on an unsupervised basis, or to consistently care for the children in a home environment. Those findings were not clearly erroneous. Dr. Stein's observations played a tangential role, as did the lack of separate bedrooms. And as to the need for separate bedrooms, the finding in any event was not error where it was made with regard to servicing the children's special needs, and not a statement that the mother "fail[ed] to meet the ideals approved by the community," as she contends.[6] Adoption of Leland, 65 Mass. App. Ct. 580, 585 (2006), quoting Custody of a Minor (No. 2), 378 Mass. 712, 719 (1979). See Adoption of Warren, 44 Mass. App. Ct. 620, 626 (1998) (judge may appropriately consider child's special needs and behavioral problems, and how home environment affects them).
Decrees affirmed.

The father has not appealed.

The children were also removed from the mother's custody from March, 2012, until August, 2012.

The burden to show parental unfitness is on DCF. Adoption of Lorna, 46 Mass. App. Ct. 134, 139 (1999). Moreover, in this case DCF initiated the review and redetermination proceeding, and thus bore the initial burden to show changed circumstances. See Care & Protection of Erin, 443 Mass. 567, 572 (2005) ("The party filing the petition [under G. L. c. 119, § 26 (c ) ] must present some credible evidence that circumstances have changed since the initial determination").

The preadoptive mother testified that the children had severe behavioral problems when first placed in her home. She testified in particular that it took several hours of soothing to get Yoshi to sleep in his room, and that he would still wake constantly with nightmares. She testified that over time these routines had a profound positive effect on Yoshi's behavior.