NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1039

ADOPTION OF YAZLIN (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from decrees finding her unfit, adjudicating her two children in need of care and protection, and terminating her parental rights.[2] She argues that the Juvenile Court judge abused his discretion in precluding her from presenting an expert witness at trial, that the judge erred in considering her noncompliance with action plans put in place by the Department of Children and Families (DCF) as evidence of her unfitness and in concluding that any unfitness was likely to continue indefinitely, and that the judge improperly injected his personal bias into the proceedings. We affirm.

---

[1] Adoption of Casey. The children's names are pseudonyms.

[2] The children's father entered into an agreement for judgment before trial stipulating to his unfitness and is not a party to this appeal.

Background.  DCF filed the underlying care and protection petition in April 2021, alleging neglect of the mother's two children, and was awarded immediate temporary custody of both children.  Shortly after removal, the children were placed with their paternal grandparents, now their preadoptive parents.

Subsequently, the mother -- who has been diagnosed with multiple mental health conditions and has a history of self-harm and substance abuse -- sporadically engaged in mental health and substance use treatment, as outlined in action plans DCF created for her.  The mother met with multiple therapists and other clinicians, including a parenting capacity evaluator retained by DCF (evaluator), who spoke with the mother in May 2023 about the physical and sexual abuse the mother suffered as a child.

About five months before trial was scheduled to begin, the judge issued a pretrial order requiring that parties designate their expert witnesses in a pretrial memorandum, accompanied by the expert's curriculum vitae and a description of the issues upon which the expert would testify.  The order warned that "failure to comply . . . shall be grounds for imposition of appropriate sanctions, including evidentiary restrictions."  The mother's counsel[3] filed a pretrial memorandum that designated the

---

[3] An attorney was appointed to represent the mother the same day the underlying care and protection petition was filed; that attorney moved to withdraw successfully in July 2024 for health reasons.  However, the trial judge appointed successor counsel

2

evaluator as a witness -- but not as an expert witness -- and listed a report authored by the evaluator as a proposed exhibit. Thirteen days before trial was scheduled to begin, the mother's counsel filed a notice of intent to have the evaluator testify "as an expert in bonding, parenting, and parental capacity," and promised to supply a copy of her curriculum vitae "upon receipt." The notice did not include any further description of the issues upon which the evaluator would testify. DCF filed a motion in limine to exclude this evidence, arguing that the mother had not, as required by the judge's order, designated the evaluator as an expert in her pretrial memorandum, and that the report constituted inadmissible hearsay and expert opinion by a lay witness.

Before the motion was decided, trial commenced. DCF called the mother, who testified about her mental health diagnoses, her experience with domestic violence, her compliance with DCF's action plans and engagement with supportive services, her criminal record, and her employment and housing histories. At one point during the mother's examination by counsel for DCF, the judge asked the mother to clarify her housing plan, in the event she regained custody of her children. Unsatisfied by her

immediately and continued the trial to January 2025, providing successor counsel ample time to prepare for trial and comply with the pretrial order.

3

answer, the judge said, "I'm not comfortable sending children into a shelter." He added that he would not return the children to her solely to help her apply for housing and admonished the mother for her lack of preparation. The mother's counsel did not object at any point during this exchange.

After DCF rested, the judge allowed its motion and excluded the evaluator's testimony and report from evidence. Counsel for the mother made no offer of proof of the evidence or opinion the evaluator would have provided. As a result, our knowledge of the evaluator's assessment of the mother is limited to a handful of references contained in the record. The results of the parenting capacity evaluation indicated that the mother was not ready to assume full-time parenting of the children and needed to address a number of issues before she could.

The judge found the mother unfit and terminated her parental rights, approved DCF's plan of adoption by the children's paternal grandparents, and ordered posttermination and postadoption contact between the children and the mother. The mother appeals.

Discussion. 1. Exclusion of the mother's expert witness. "The decision to exclude expert testimony rests in the broad discretion of the judge and will not be disturbed unless the exercise of that discretion constitutes an abuse of discretion or other error of law." Palandjian v. Foster, 446 Mass. 100,

4

104 (2006). Generally, it is not an abuse of discretion for a judge to exclude expert testimony when the proponent has failed to make required disclosures. See Elias v. Suran, 35 Mass. App. Ct. 7, 10 (1993).

We discern no abuse of discretion in the judge's decision to preclude the mother from calling the evaluator as an expert witness. As a direct result of the failure by the mother's counsel to comply with the pretrial order, the record contains no meaningful description of the testimony the evaluator would have offered -- the only references to the results of the parenting capacity evaluation suggest that the evaluator's testimony would have been harmful, not helpful to the mother's case. Without the benefit of a description of the substance of the evaluator's expected testimony -- whether contained in a pretrial memorandum or an offer of proof -- "we are unable to determine whether the exclusion of [the evaluator's] testimony would have constituted prejudicial error."[4] Commonwealth v. Cass, 358 Mass. 805, 805 (1970). "[W]e do not interfere with the judge's exercise of discretion in the absence of a showing of prejudicial error resulting from an abuse of discretion." Solimene v. B. Grauel & Co., K.G., 399 Mass. 790, 799 (1987).

---

[4] At best, the evaluator's testimony might have supported a "reasonable efforts" claim, which, as discussed infra, was not made at trial. The record does not suggest that the mother wished to offer the evaluator's testimony for that purpose.

5

Though the mother's brief casts disclosure requirements as "technical" and complains that exclusion is an overly harsh penalty that "elevate[s] form over substance," it is precisely her failure to comply with these requirements that prevents us from conducting a fully informed review of her assertions of error on appeal.  Particularly, as the mother points out, "in a case where the stakes are so high," expert witness disclosures are essential to a full and fair appraisal of the issues, at trial and on appeal.  See Kace v. Liang, 472 Mass. 630, 637 (2015) ("Preventing untimely disclosure of expert testimony is particularly important" where such evidence is "the central feature of the case").  In light of trial counsel's failure to comply with the judge's pretrial order or to provide other evidence of the content of the evaluator's testimony, we are unable to say that the judge's decision to exclude the testimony "falls outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

2.  Mother's unfitness.  A decision to terminate a mother's parental rights must be supported by clear and convincing evidence that the mother is currently unfit to care and provide for her children and that her unfitness is not temporary.  See Adoption of Xarissa, 99 Mass. App. Ct. 610, 615 (2021).  "Evidence of parents' refusal to cooperate with the department, including failure to maintain service plans and refusal of

6

counseling programs, is relevant to the determination of unfitness." Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005). The mother argues here that it was error for the judge to consider her noncompliance with DCF's action plans as evidence of her unfitness, because the plans did not accommodate her particular needs for confidential and trauma-informed care, as a victim of childhood abuse.

This argument boils down to a "reasonable efforts" challenge -- a contention that DCF failed to make reasonable efforts to make it possible for the children to return to the mother's custody, as required under G. L. c. 119, § 29C. See Care & Protection of Rashida, 488 Mass. 217, 220 (2021). See also Adoption of Ilona, 459 Mass. 53, 61 (2011) (reasonable efforts must include accommodating parent's "special needs"). Indeed, the mother repeatedly cites cases involving reasonable efforts challenges. See, e.g., Adoption of Ilona, supra at 61-62; Adoption of Lenore, 55 Mass. App. Ct. 275, 278-279 (2002).

Here, before making the termination decision, the judge specifically found that DCF made reasonable efforts to return the children to their mother's care as required by our case law. See Care & Protection of Rashida, 488 Mass. at 220 n.4. The judge did not address the specific failure now alleged on appeal because the mother made no such argument below. "'It is well-established that a parent must raise a claim of inadequate

7

services in a timely manner.' . . . A parent cannot raise a claim of inadequate services for the first time on appeal, as the department would not have had the opportunity to address it." Adoption of West, 97 Mass. App. Ct. 238, 242 (2020), quoting Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010), S.C., 460 Mass. 72 (2011). Because the mother and her counsel failed to pursue any of the "many avenues available to raise a claim of inadequate services" regarding the action plans, the claim has been waived. See Adoption of Mattis, 106 Mass. App. Ct. 548, 551 (2026), quoting Adoption of West, supra.

Regardless, even if we accepted the mother's argument and set aside evidence of the mother's noncompliance with DCF's action plans, the judge's other findings of fact, which the mother does not contest, would sufficiently support his determination that the mother was unfit. A parent's level of engagement with supportive services is not determinative of fitness, see Care & Protection of Vick, 89 Mass. App. Ct. 704, 709 (2016) (regardless of "mother's refusal to be evaluated and accept mental health services . . . mother's inability to provide for the child's over-all welfare and best interests was the central determination of her unfitness"), and it was not determinative in this case. Rather, the judge found the mother unfit based "on a constellation of factors that pointed to termination as being in the best interests of the child[ren]."

_Adoption of Greta_, 431 Mass. 577, 588 (2000). Excluding one of these factors from the analysis does not change the outcome. The mother's struggles with substance use, mental health, and maintaining stable housing, employment, and relationships, combined with the children's particularly strong bond with their paternal grandparents and their attachment to their preadoptive home, constitute clear and convincing support for the judge's conclusions of parental unfitness and the best interests of the children. See _Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption_, 16 Mass. App. Ct. 965, 966 (1983) (finding of unfitness supported where "child had formed strong bonds to his caretakers and would suffer irreparable harm if returned to his mother, who lacks the capacity to give corresponding physical and emotional support to the child"). The mother's argument that she presented sufficient evidence of "recent positive gains," _Adoption of Paula_, 420 Mass. 716, 731 (1995), to undermine the judge's finding that her unfitness would continue into the indefinite future is essentially a request that we second-guess the judge's weighing of the evidence and the mother's credibility. "[T]he judge was entitled to consider the evidence of her recent improvements within the context of her earlier and continuing deficits. Weighing strengths against weaknesses is within the core competency of the trial judge, who has the benefit not only of

9

the evidence, but of seeing and assessing the parents themselves." Adoption of Jacques, 82 Mass. App. Ct. 601, 608 (2012). The record reveals no clear error or abuse of discretion in the judge's conclusions with regard to the mother's unfitness.

3. Judge's bias. Finally, the mother contends that the brief exchange in which the judge told the mother he was "not comfortable sending children into a shelter" cast doubt on the fairness of the judgment, suggesting that the judge terminated the mother's rights based on her poverty and homelessness.

As a threshold matter, the mother's trial counsel did not object to the now challenged comment and did not seek the judge's recusal. "Generally, issues not raised . . . in the trial court are not addressed on appeal, absent exceptional circumstances." Adoption of Mary, 414 Mass. 705, 712 (1993). See Adoption of Jacob, 99 Mass. App. Ct. 258, 271 (2021) ("timely objection affords the trial judge an opportunity to correct any possible errors"); Adoption of Norbert, 83 Mass. App. Ct. 542, 545 (2013) ("mother had an affirmative obligation to seek recusal 'at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification'" [citation omitted]). Accordingly, the mother's argument has been waived.

Even assuming that this issue had been preserved for appeal, we would not disturb the decrees. To be sure, the State is not "free to intrude upon families simply because their households fail to meet the ideals approved by the community," Custody of a Minor (No. 2), 378 Mass. 712, 719 (1979), and "[p]overty is not a reason upon which to base a determination of unfitness," Adoption of Leland, 65 Mass. App. Ct. 580, 585 (2006). "While we acknowledge that some of the judge's comments were excessively critical and inappropriate, we are not persuaded that the record discloses any bias or prejudice against the mother." Adoption of Norbert, 83 Mass. App. Ct. at 545. In his findings of fact and conclusions of law, the judge properly focused on the mother's inability to provide safe and stable housing for our children -- not the particular type of placement where the mother and children would reside. These are factors that a judge is entitled to consider in determining parental fitness. See Adoption of Vito, 431 Mass. 550, 555 (2000); Petition of Catholic Charitable Bur. of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption, 395 Mass. 180, 184 (1985); Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008); Care & Protection of Lillith, 61 Mass. App. Ct. 132, 136 (2004). Based on our review of the entire record, we do not think that the judge's comments reflected or produced a biased decision; rather, his detailed findings of fact and rulings of

11

law demonstrate a thorough assessment and an even-handed analysis of all the evidence presented at trial.

Decrees affirmed.

By the Court (Rubin, Massing & Toone, JJ.[5]),

Clerk

Entered:  June 11, 2026.

---

[5] The panelists are listed in order of seniority.